UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BEVERLY JANE SEYMOUR,

     Plaintiff,

v.                           Case No:   2:15-cv-518-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

### OPINION AND ORDER

This cause is before the Court on Plaintiff Beverly Jane Seymour's Complaint (Doc. 1) filed on August 28, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    I.    **Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

        A.  **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On October 29, 2008, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of October 1, 2007.  (Tr. at 270, 274).  Plaintiff's applications were denied initially on April 22, 2009 (Tr. at 102, 103) and upon reconsideration on September 25, 2009 (Tr. at 104, 105).  A hearing was held before Administrative Law Judge ("ALJ") D. Kevin Dugan on August 18, 2010.  (Tr. at 36-64).  The ALJ issued an unfavorable decision on September 8, 2010.  (Tr. at 106-24).  The ALJ found Plaintiff not to be under a disability from October 1, 2007, through the date of the decision.  (Tr. at 119).

The Appeals Council granted Plaintiff's request for review.  (*See* Tr. at 125).  On September 14, 2012, the Appeals Council vacated the hearing decision and remanded the case to the ALJ.  (Tr. at 126).  A subsequent video hearing was held on remand on June 26, 2013 before ALJ Rossana L. D'Alessio.  (Tr. at 65-101).  The ALJ issued an unfavorable decision on November 15, 2013.  (Tr. at 17-35).  The Appeals Council denied Plaintiff's request for review.  (Tr. at 1-7).  The ALJ found Plaintiff not to be under a disability from October 1, 2007, through the date of the decision.  (Tr. at 28).

Plaintiff filed a Complaint (Doc. 1) in this Court on August 28, 2015.  Defendant filed an Answer (Doc. 10) on November 24, 2015.  The parties filed Memoranda in support.  (Docs. 21-23).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 14).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

In this case, on remand, ALJ D'Alessio found that Plaintiff met the insured status requirements through December 31, 2011.  (Tr. at 22).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date.  (Tr. at 22).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  "congenital spondylosis of lower spine vertebra, spondylolisthesis, bilateral hearing loss, bilateral carpal tunnel syndrome, right shoulder atrophy, [and] status-post clavicular surgery."  (Tr. at 22).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 25).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that:

> [C]laimant can lift and carry less than ten pounds occasionally.  Claimant can stand or walk for two hours in an eight-hour day and sit for six hours in an eight-hour day.  Claimant should never reach above her shoulder with her right arm.  Claimant is limited in her hearing in that she should not be exposed to loud noise or moderate noise.  Claimant retains the ability to frequently hear a conversation within reasonable range where she can hear persons who are facing her when speaking and claimant can speak on the phone using her right ear.

(Tr. at 25).

At step four, the ALJ determined that Plaintiff "is capable of performing past relevant work as a secretary, expediter, [and] office clerk."  (Tr. at 27).  The ALJ stated that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (Tr. at 27).  The ALJ further stated that "[t]he record supports that the claimant worked these jobs for sufficient duration and earnings level to meet the criteria of past relevant work."  (Tr. at 28).

The ALJ noted that the vocational expert ("VE") "testified at the hearing that the claimant's past work as a secretary, DOT#210.362-030, was specifically performed at the light exertional level but is generally performed at the sedentary exertional level and is skilled work with an SVP of 6."  (Tr. at 27-28).[2]  The ALJ further stated that Plaintiff "has past work as a plumber helper/expediter, which is a combination of two jobs DOT #'s 869.664-014 and 222.367-018."  (Tr. at 28).  The ALJ stated that Plaintiff "indicated that she performed this work

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation code.

at the light level however plumber helper is generally classified as heavy and expediter as sedentary work." (Tr. at 28). Further, the ALJ stated that "[p]lumber helper has an SVP of 4 and is semi-skilled" and that "[e]xpediter has an SVP of 6 and is considered skilled work." (Tr. at 28). Moreover, the ALJ stated that Plaintiff "has past work as an office clerk, DOT #219.362-010, which the claimant performed at a sedentary level but which is generally performed at a light exertional level" and that "[o]ffice clerk has an SVP of 4 and is considered semi-skilled." (Tr. at 28). The ALJ found that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the vocational expert testified that a person having the claimant's residual functional capacity would be able to perform the aforementioned secretary and expediter jobs generally and the office clerk position as specifically performed by the claimant." (Tr. at 28). As a result, the ALJ found that Plaintiff "can perform her past work as an office clerk as specifically performed and her past work as a secretary and expediter as generally performed." (Tr. at 28).

Because the ALJ determined that Plaintiff could perform her past relevant work, the ALJ did not proceed to step five. (*See* Tr. at 28). The ALJ found that Plaintiff had not been under a disability from October 1, 2007, through the date of the decision. (Tr. at 28).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) The ALJ erred by failing to follow the Appeals Council's remand order.

(2) The ALJ erred in finding that Ms. Seymour can perform her past relevant work, as the duties required by each job exceed the ALJ's RFC.

(3) The ALJ erred by failing to adhere to plainly stated Agency policy requiring that even non-severe impairments must be considered in the RFC finding.

(Doc. 21 at 3). The Court addresses each of these issues in turn.

### A. The Appeals Council's Remand Order and the ALJ's Development of the Record

Plaintiff first argues that the ALJ erred by failing to follow the Appeals Council's Remand Order. (*Id.* at 4). Plaintiff specifically argues that (1) the ALJ failed to develop the record with respect to Ms. Seymour's hearing impairment, right shoulder impairment, and

cleidocranial dysplasia and (2) the ALJ failed to properly consider the vocational rehabilitation records in her decision.  (*Id.* at 7-14).

### 1.  The Appeals Council's Remand Order

The Appeals Council originally remanded the case for consideration of four issues.  (Tr. at 125-29).  Plaintiff characterized these four issues as follows:

> 1)      New evidence submitted to the Appeals Council pertaining to her hearing and right shoulder impairments suggested possible worsening of both conditions, warranting further development;
>
> 2)      The ALJ mischaracterized portions of Ms. Seymour's testimony regarding her hearing impairment;
>
> 3)      In light of the new evidence, further consideration was warranted to determine the combined effects of her impairments and any resulting exertional/non-exertional limitations in performing work-related activities; and
>
> 4)      The hearing decision did not contain an adequate function-by-function assessment of Ms. Seymour's past relevant work as a secretary.    Further development and input by a vocational expert was warranted.

(*Id.* (citing Tr. at 126-28) (internal citations omitted)).

In light of these issues, the Appeals Council instructed the ALJ on remand, in pertinent part, to obtain additional evidence regarding Plaintiff's "hearing impairment, right shoulder impairment, and cleidocranial dysplasia, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913)."  (Tr. at 128).  The Appeals Council further stated that the additional evidence may include "if warranted and available" consultative examinations in audiology and orthopedics.  (Tr. at 128).  Moreover, the Appeals Council stated that "records from Florida State Vocational Rehabilitation Services should be obtained."  (Tr. at 128).  Furthermore, the Appeals Council instructed the ALJ to obtain evidence from a medical expert, if necessary, "to clarify the limiting effects of claimant's impairments,"

and also from a vocational expert to determine whether Plaintiff is able to perform any past relevant work or acquired any transferable skills.  (Tr. at 128-29).

Plaintiff argues that the ALJ failed to follow the Remand Order in violation of 20 C.F.R. §§ 404.977, 416.1477.  (*Id.* at 5-6).  Further, Plaintiff contends that every reason advanced in her brief as to why remand is now required by this Court is a reason that the Appeals Council proffered when it remanded the case to the ALJ in the first place.  (*See id.* at 6).  Plaintiff argues that "the Agency should not be permitted to 'argue with itself' as to the reasons for necessitating remand especially where, as here, the ALJ plainly did not comply."  (*Id.* at 6-7).  Thus, Plaintiff argues that "the record remains woefully inadequate concerning the nature and extent of Ms. Seymour's impairments and resultant limitations" and, therefore, remand is required in this case.  (*Id.* at 7).

Defendant disagrees, arguing that the ALJ fully developed the record.  (Doc. 22 at 7).  Defendant contends that the ALJ received and considered additional evidence and found that Plaintiff was not disabled.  (*Id.* at 8).  Moreover, Defendant argues that "there must be [a] showing of prejudice before remand for further development of the record is warranted."  (*Id.* at 10 (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  Defendant contends that "[p]rejudice requires showing that the 'ALJ did not have all of the relevant evidence before him [sic] in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision.'"  (*Id.* (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).  Here, Defendant argues that "Plaintiff has demonstrated no prejudice to warrant remand of this case for further development, particularly since the record already contained objective medical evidence and testimony from her regarding her impairments."  (*Id.* at 10-11).  Defendant argues, therefore, that the ALJ's decision should be affirmed.  (*Id.* at 11).

## 2.  Legal Standard

ALJs have a basic duty to develop a full and fair record.  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)).  The Eleventh Circuit has noted that "[t]his is an onerous task, as the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'"  *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  "In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole."  *Id.* (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985) (per curiam)).  Moreover, the Eleventh Circuit has noted that "remand for further factual development of the record before the ALJ is appropriate where 'the record reveals evidentiary gaps which result in unfairness or clear prejudice.'"  *Id.* (citing *Brown*, 44 F.3d at 935).

As stated above, however, where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards*, 937 F.2d at 584 n.3; and *Barnes*, 932 F.2d at 1358.  Moreover, it is not for the Court to decide the facts anew, make credibility determinations, or re-weigh the evidence.  *Henry*, 802 F.3d at 1267 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

## 3.  The ALJ's Development of the Record

First, Plaintiff specifically argues that the ALJ failed to follow the Remand Order by failing to develop the record with respect to her hearing impairment, right shoulder impairment, and cleidocranial dysplasia.  (Doc. 21 at 7).  Plaintiff notes that ALJ Dugan, the ALJ at the initial hearing, considered medical evidence through Exhibit 24F.  (*Id.* (citing Tr. at 123-24)).  At the

outset of the supplemental hearing, Plaintiff notes that ALJ D'Alessio stated that she was in receipt of medical records through Exhibit 32F.  (*Id.* (citing Tr. at 69)).  Plaintiff argues that most of the evidence available to ALJ D'Alessio had previously been submitted to the Appeals Council, prompting its decision to remand for further development.  (*Id.* (citing Tr. at 205-06)).  Thus, Plaintiff argues that the ALJ did not obtain additional evidence as required by the Remand Order.  (*See id.*).

In support, Plaintiff points to the ALJ's remarks on the record at the hearing regarding the Appeals Council's Remand Order.  (*Id.* at 7 (citing Tr. at 70)).  The ALJ stated:

> Okay.  Then I should add that this is an Appeals Council remand.  The original decision was on September 8, 2010, and the remand order *instructs the ALJ to obtain additional evidence* regarding the right shoulder, her hearing impairment, the dysplasia.  I further evaluate these objective complaints, give further consideration to the RFC, obtain a medical expert, and obtain vocational expert testimony, or -- since I inherited these cases, maybe about a week and a half ago, I did not have time to get what the -- except for the VE, *I didn't have time to get a doctor*.  So, what I am going to do is have a doctor look at this afterwards through an interrogatory and I'll go ahead and proffer that to you.

(Tr. at 70) (emphasis added).  The ALJ did not, however, have a doctor look at Plaintiff's case afterwards through an interrogatory.  In fact, Plaintiff states that the only new evidence entered into the record was the vocational rehabilitation records—entered by Plaintiff.  (Doc. 21 at 8).  Plaintiff argues that the ALJ should have ordered consultative examinations, or at least the medical interrogatories promised at the hearing.  (*Id.*).

Plaintiff argues that this omission by the ALJ to develop the record was prejudicial.  (*Id.* at 9).  For instance, as to her hearing impairments, Plaintiff acknowledges that "there are several audiograms in the record."  (*Id.* at 9).  Yet, Plaintiff contends that "there is no medical opinion regarding the extent and nature of the work related limitations associated with Ms. Seymour's hearing loss."  (*Id.*).  As a result, Plaintiff argues that this omission affected the ALJ's

hypothetical to the VE.  (*See id.* (citing Tr. at 93)).  At the hearing, in asking the VE a hypothetical, the ALJ stated, "[t]hey have here limited in hearing, but they didn't really specify. Let me see if they -- they didn't really specify.  And then, also she would need to avoid even moderate exposure to noise due to her hearing decrease."  (Tr. at 93).  Plaintiff argues that the ALJ's lack of information forced her to rely on her lay opinion to determine which limitations were appropriate.  (*See* Doc. 21 at 9).

Plaintiff further argues that "as the Appeals Council pointed out in its remand notice, the evidence suggests that Ms. Seymour's hearing impairment imposed more significant limitations [than] found by ALJ Dugan."  (*Id.* (citing Tr. at 126-27)).  Moreover, Plaintiff argues that "[v]ocational rehabilitation records from December 16, 2010 revealed that Ms. Seymour has difficulty hearing 'even with her hearing aids on and the person facing her.'"  (*Id.* at 10 (citing Tr. at 734)).  Additionally, Plaintiff states that "[h]er presentation during both administrative hearings further demonstrated her difficulty hearing, even with hearing aids" as Plaintiff "needed questions to be repeated on 13 occasions during the August 2010 hearing and on 9 occasions during the June 2013 hearing."  (*Id.* (citing Tr. at 38-42, 44, 47, 52, 60, 62, 72-83, 78, 80, 82, 84, 86-87)).  Plaintiff contends that the "evidence plainly demonstrates that Ms. Seymour has significant communicative limitations not accounted for in the ALJ's RFC" including "how her communication imitations [sic] would affect her ability to interact, and/or would affect her ability to be safe in the workplace."  (*Id.*).

Additionally, Plaintiff argues that "[t]he record also shows that Ms. Seymour's . . . orthopedic complaints have worsened since the State Agency consultants reviewed it [sic] in 2009, Tr. 535-538; 561-567, which naturally suggests that a current evaluation would likely support additional worsening."  (*Id.* at 11).  Accordingly, Plaintiff argues that, because the ALJ

failed to fully develop the record, "she did the one thing that is not permitted, namely rely upon her lay analysis of the raw medical data." (*Id.* (citing *Graham v. Bowen*, 786 F.2d 1113 (11th Cir. 1986))).

Defendant disagrees, arguing that the ALJ did, in fact, further develop the record regarding Plaintiff's impairments. (*Id.* at 8). Defendant states that the record on remand "contained close to 150 pages of additional evidence regarding [Plaintiff's] impairments, including evidence from vocational rehabilitation services." (*Id.* (citing Tr. at 622-763)). Defendant further notes that "[t]he ALJ also held a second administrative hearing, at which he [sic] gave Plaintiff an opportunity to discuss her impairments and at which a VE testified regarding the impact of Plaintiff's limitations on her ability to work." (*Id.* at 7-8 (citing Tr. at 65-101)). Defendant states that "[t]he ALJ considered this additional evidence, along with the evidence he [sic] had at the time of the first decision, in finding that Plaintiff was not disabled." (*Id.* at 10).

Defendant further contends that the relevant regulations and case law provide that "[a]n ALJ is not obligated to order a consultative exam as long as the record contains sufficient evidence for the ALJ to make an informed decision." (*Id.* at 8 (citing 20 C.F.R. §§ 404.1519a, 416.919a; *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988))). Further, the Commissioner argues that "[t]he fact that the ALJ said at the hearing that she needed more information is not determinative." (*Id.* at 9).

Here, Defendant contends that "the record contained sufficient information for the ALJ to make a decision regarding Plaintiff's hearing and shoulder impairments." (Doc. 22 at 9). As to Plaintiff's hearing impairments, Defendant states that "[a]s the ALJ noted, Plaintiff was able to

work for many years with her hearing impairment, and the record evidence showed that Plaintiff's hearing had not materially worsened in the last several years and that it had actually significantly improved by 2012 with the help of new hearing aids." (Doc. 22 at 9 (citing Tr. at 26)). Additionally, Defendant notes that in 2004, "Plaintiff's speech discrimination scores were 60% in the left ear and 92% in the right ear" and that in 2008, "her speech discrimination scores were 76% in the right and 88% in the left." (*Id.* (citing Tr. at 419, 464)). Defendant states that "Plaintiff's left speech discrimination score decreased to 60% in October 2010, but in April 2012, Plaintiff reported substantial improvement in hearing after receipt of new hearing aids." (*Id.* (citing Tr. at 688, 721)). Moreover, Defendant states that the ALJ noted that "Plaintiff was able to hear casual conversation without issue at the hearing." (*Id.* (citing Tr. at 27)). Thus, Defendant argues that "the ALJ had sufficient information to make a determination regarding Plaintiff's hearing impairment." (*Id.* at 10).

Moreover, Defendant argues that "[t]he ALJ had sufficient information regarding Plaintiff's shoulder and upper extremity impairments." (*Id.*). Defendant states that as the ALJ noted that "more recent imaging revealed congenital absence of a fully developed clavicle and arthritic changes in the right shoulder." (*Id.* (citing Tr. at 24, 690, 692)). Defendant further notes that "[a] 2011 nerve conduction study revealed left carpal tunnel syndrome" but that on exam, "Plaintiff routinely exhibited normal motor strength and sensation in the upper extremities." (*Id.* (citing Tr. at 27, 433, 524, 529, 646, 717, 735, 737-38)). Thus, Defendant argues that "[t]he evidence before the ALJ substantially supports the ALJ's RFC limiting Plaintiff from overhead activity with the right arm and no other manipulative limitations" and that "Plaintiff has failed to explain what further evidence was warranted." (*Id.*).

Upon review of the record and consideration of the parties' arguments, however, the Court is not convinced that (1) the ALJ fully complied with the Appeals Council's September 14, 2012 Remand Order or (2) the record evaluated by the ALJ contained sufficient information to properly evaluate Plaintiff's alleged disability.

A review of the Remand Order shows that the Appeals Council specifically directed *the ALJ* to "[o]btain additional evidence concerning the claimant's hearing impairment, right shoulder impairment, and cleidocranial dysplasia, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence." (Tr. at 128). While Defendant argues that the ALJ further developed the record regarding Plaintiff's impairments because, on remand, the record "contained close to 150 pages of additional evidence regarding [Plaintiff's] impairments, including evidence from vocational rehabilitation services" (Doc. 22 at 7), upon review, the Court finds that it is unclear whether *the ALJ* obtained the additional evidence or whether this evidence was already available to the Appeals Council before remand.

On this point, the ALJ's statements on the record at the hearing provide strong evidence that the ALJ had not obtained additional evidence before the hearing. (*See* Tr. at 70). Referring to the Remand Order, the ALJ stated that she was able to obtain a VE for the hearing. (Tr. at 70). Nevertheless, the ALJ stated that she had not had "time to get what the -- except for the VE, I didn't have time to get a doctor. So, what I am going to do is have a doctor look at this afterwards through an interrogatory and I'll go ahead and proffer that to you." (Tr. at 70). Despite apparently acknowledging that she had not fully complied with the Appeals Council's Remand Order, the ALJ did not obtain an interrogatory from a doctor. Moreover, after the hearing was completed, the only additional medical evidence added to the record was provided

by Plaintiff's counsel.  (*See* Tr. 69, 715-63).  These medical records included the vocational

rehabilitation records that the Appeals Council ordered the ALJ to obtain and consider

*independently* from the other evidence to be obtained.  (*See* Tr. at 128).  Thus, it does not appear

to the Court that *the ALJ* affirmatively obtained any additional evidence as required by the

Appeals Council Remand Order.  (*See* Tr. at 128).

Moreover, the Appeals Council advised the ALJ to obtain evidence from a medical

expert, if necessary, "to clarify the limiting effects of claimant's impairments."  (Tr. at 128).  In

this instance, Defendant does not rebut Plaintiff's contention that "there is no medical opinion

regarding the extent and nature of the work related limitations associated with Ms. Seymour's

hearing loss." (Doc. 21 at 7).  As pointed out by Plaintiff, this lack of clarity appeared to affect

the hearing conducted by the ALJ.  (*See id.*).  In asking a hypothetical to the VE, the ALJ stated,

"[t]hey have here limited in hearing, *but they didn't really specify*.  Let me see if they -- *they*

*didn't really specify*.  And then, also she would need to avoid even moderate exposure to noise

due to her hearing decrease."  (Tr. at 93) (emphasis added).  This statement by the ALJ

demonstrates that she did not have sufficient information of record to properly evaluate

Plaintiff's hearing impairments at the hearing.

Additionally, the Appeals Council stated that the additional evidence may include "if

warranted and available" consultative examinations in audiology and orthopedics.  (Tr. at 128).

Here, vocational rehabilitation records – which were not discussed by the ALJ – appear to

contradict some of the ALJ's findings as to Plaintiff's hearing impairments and right shoulder

impairments.  (*See* Tr. at 715-60).  Thus, it appears to the Court that there are inconsistencies and

gaps in the record.  Because there are inconsistencies and gaps in the record, consultative

examinations appear to have been warranted.  *See* 20 C.F.R. §§ 404.1519a, 416.919a; *see also*

*Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.").

This Court has determined in at least one case that an ALJ commits legal error by not following 20 § C.F.R. 404.977(b), which requires adherence to the remand orders of the Appeals Council.  *Stepp v. Colvin*, No. 8:15-cv-1183-T-27AAS, 2016 WL 4150479, at *6 (M.D. Fla. July 11, 2016) (Sansone, J.), *report and recommendation adopted*, No. 8:15-CV-1183-T-27AAS, 2016 WL 4157334 (M.D. Fla. Aug. 2, 2016).  Here, the Court finds that the ALJ's failure to comply fully with the Remand Order constitutes a failure to fully develop the record.  Moreover, the Court finds that the resulting gaps and inconsistencies in the record are prejudicial to Plaintiff in this case because further factual information may lead to a different result.  Accordingly, the Court finds that remand is warranted here to fully develop the administrative record.  *See Henry*, 802 F.3d at 1267.  On remand, the Commissioner is directed to fully develop the factual record.

### 4. The ALJ's Evaluation of Plaintiff's Vocational Rehabilitation Records

Plaintiff also argues that the ALJ failed to properly consider the vocational rehabilitation records in her decision.  (Doc. 21 at 12).  On this point, Defendant acknowledges that the ALJ did not specifically address the records from Dr. Homi Cooper or those of the vocational rehabilitation counselor.  (Doc. 22 at 12-13).  Yet, as to Dr. Cooper's opinion, Defendant argues that this failure does not constitute reversible error because Dr. Cooper's "findings are consistent with the ALJ's RFC finding."  (*Id.* at 13).  Moreover, Defendant argues that the vocational rehabilitation counselor gave opinions on issues reserved to the Commissioner, making the omission harmless.  (*Id.* at 13).  Further, Defendant argues that the vocational rehabilitation counselor's opinion is considered an "other source," not an "acceptable medical source."  (*Id.* at

14).  Defendant argues that "[a]n ALJ must either explain the weight given to opinions from 'other sources' or otherwise ensure that the discussion of the evidence allows a claimant or other reviewer to follow his reasoning."  (*Id.* (citing SSR 06-03p, 2006 WL 2329939, at *6)).  Here, while the ALJ did not weigh the counselor's statement, Defendant argues that the ALJ's reasoning was clear in that "contrary to the counselor, Plaintiff was not disabled and that her impairments did not prevent her from being able to work."  (*Id.*).

In evaluating this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  When evaluating a medical source, the factors to be considered by an ALJ include:  "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization."  *Id.* (citations omitted).

An ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  Further, an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); *see also Jusick v. Comm'r of Soc. Sec.*, No. 6:10-cv-126-ORL-GJK, 2011 WL 1059106, at *10 (M.D. Fla. Mar. 21, 2011); 20 C.F.R. §§ 404.1527(a)(2).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Winschel*, 631 F.3d at 1179 (quoting *Cowart v.*

*Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  When an ALJ fails to "state with at least some

measure of clarity the grounds for his decision," the Court will decline to affirm "simply because

some rationale might have supported the ALJ's conclusion."  *Winschel*, 631 F.3d at 1179

(quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).  The Eleventh Circuit has

held that "[i]n such a situation, 'to say that [the ALJ's] decision is supported by substantial

evidence approaches an abdication of the court's duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational.'"  *Winschel*, 631 F.3d at 1179 (quoting

*Cowart*, 662 F.2d at 735).  Thus, failure to state with particularity the weight given to different

medical opinions and the reasons therefor constitutes reversible error.  *Jusick*, 2011 WL

1059106, at *10 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

Moreover, while an ALJ has no duty to give significant or controlling weight to "other

sources," *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) (citing 20

C.F.R. §§ 404.1513, 416.913, 404.1527(a)(2)), an ALJ still "should explain the weight given to

opinions from these 'other sources,'" SSR 06-03p, 2006 WL 2329939, at *6.

In this instance, a review of Dr. Cooper's impressions shows that Dr. Cooper discussed

Plaintiff's hearing impairment, right shoulder impairment, and cleidocranial dysplasia, all of

which the ALJ was instructed to obtain more evidence regarding.  (Tr. at 716).  Moreover, ALJs

are required to consider every medical opinion, *Bennett*, 2009 WL 2868924, at *2, and must state

with particularity the weight given to different medical opinions and the reasons therefor,

*Winschel*, 631 F.3d at 1179.  Here, as acknowledged by Defendant, the ALJ did not evaluate the

records from Dr. Cooper.  (Doc. 22 at 12-14).  While Defendant argues that Dr. Cooper's

findings are consistent with the ALJ's RFC finding, the Court will not affirm "simply because

some rationale might have supported the ALJ's conclusion."  *Id.*  Accordingly, the Court cannot

come to any other conclusion than the ALJ's failure to evaluate Dr. Cooper's opinion constitutes reversible error in this case.

Furthermore, while opinions on whether a claimant is "disabled" or unable to work are opinions on issues reserved to the Commissioner, 20 C.F.R. §§ 404.1527(d), 416.927(d), an ALJ still "should explain the weight given to opinions from these 'other sources,'" SSR 06-03p, 2006 WL 2329939, at *6.  In this instance, the ALJ did not evaluate the opinion of the vocational rehabilitation counselor or explain the weight given to it.  Thus, the Court finds that the ALJ further erred by failing to explain the weight given to the opinion of the vocational rehabilitation counselor.

On remand, the Commissioner is directed to consider the vocational rehabilitation records, including those of Dr. Cooper and the vocational rehabilitation counselor.

### B.  The ALJ's Step Four Analysis

Plaintiff argues that ALJ erred in finding that she can perform her past relevant work, as the duties required by each job exceed the ALJ's RFC.  (Doc. 21 at 14).  In this instance, because the Court has determined that the ALJ did not fully develop the record and because the additional medical records will affect the ALJ's RFC assessment on remand, the Court finds that an analysis of whether Plaintiff can perform her past relevant work is premature at this time.  On remand, the ALJ should reevaluate Plaintiff's RFC with all of the medical evidence of record, including any additional evidence to be obtained, in determining whether Plaintiff can perform her past relevant work.

### C.  Plaintiff's Mental Impairments

The final issue raised by Plaintiff is her contention that the ALJ erred by failing to consider her non-severe mental impairments in making her RFC assessment.  (Doc. 21 at 19).

Defendant disagrees, arguing that "[c]ontrary to Plaintiff's argument, the ALJ properly considered her non-severe mental impairment in assessing the RFC." (Doc. 22 at 11).

On this issue, the Court notes that an impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.1521(a). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the Court notes that the ALJ made a determination that Plaintiff suffered from a number of severe impairments including:  "congenital spondylosis of lower spine vertebra, spondylolisthesis, bilateral hearing loss, bilateral carpal tunnel syndrome, right shoulder atrophy, [and] status-post clavicular surgery."  (Tr. at 22).  Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe.  *See Heatly*, 382 F. App'x at 825.  Rather, the only requirement is that the ALJ considers all of Plaintiff's impairments in combination, whether severe or non-severe.  *See id.*

Here, contrary to Plaintiff's contention, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe.  Specifically, in making his RFC determination, the ALJ stated that:

> In making this finding, the undersigned has *considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. at 15) (emphasis added).  In addition to this statement, the Court notes that the ALJ specifically considered Plaintiff's mental impairments at step-two, finding Plaintiff's mental impairments were non-severe.  (Tr. at 23-24).  Furthermore, the record shows that the ALJ specifically considered Plaintiff's mental impairments in making her RFC determination and also at step four.  (Tr. at 27).  There, the ALJ stated:

> Claimant has also not sought psychiatric care and reported to the psychological examiner that any depression or anxiety was only "occasional."  All other aspects of the claimant's mental examination were unremarkable including cognitive ability, attention, concentration, thought processes, and social engagement.  Claimant has not received significant ongoing treatment for cleidocranial dysplasia.

(Tr. at 27).

Based on these statements and a review of the record, the Court finds that the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments. Thus, regardless of whether the ALJ erred in her conclusion that Plaintiff's mental impairments were non-severe, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental impairments are severe, or if she did err, the error was harmless. *See Heatly*, 382 F. App'x at 825.

Nevertheless, because the Court finds that the ALJ's Decision is not supported by substantial evidence, the Court directs the Commissioner, on remand, to fully consider Plaintiff's mental impairments in combination with her other medically determinable impairments of record.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to fully develop the administrative record and to reconsider Plaintiff's RFC in light of the additional medical evidence of record to be obtained.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 26, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties